Van Voorhis, J.
We think that the petition should be dismissed. The settlement agreement which resolved an earlier contest over this bequest by John L. Heffron provided for its transfer to Syracuse University “ for the purposes stated in paragraph Ten of the said last will and testament of John L. Heffron, deceased In other words, this fund was transferred under the agreement of settlement but subject to the conditions and for the uses stated in the will. The closing of the Syracuse University Medical College presents the question whether this gift of John L. Heffron, deceased, for its benefit reverts to Dr. Heffron’s estate or passes to the State University of New York under the cy pres doctrine. That, in turn, depends upon whether paragraph “ tenth ” of his will makes a general charitable gift for the benefit of humanity at large, or whether his intention was to benefit humanity exclusively through the agency of the Medical College of Syracuse University. The issue is thus formulated in the decisions cited in the opinions below and in the briefs, such as Matter of Potter (307 N. Y. 504); Matter of Neher (279 N. Y. 370); City Bank Farmers Trust Co. v. Arnold (283 N. Y. 184); Matter of Gary (248 App. Div. 373, affd. 272 N. Y. 635); Matter of Harrington (243 App. Div. 235); Saltsman v. Greene (136 Misc. 497, affd. 231 App. Div. 781, affd. 256 N. Y. 636); Matter of Merritt (280 N. Y. 391); *669 Matter of Fletcher (280 N. Y. 86); Sherman v. Richmond Hose Co. (230 N. Y. 462); Matter of O’Hanlon (147 Misc. 546, per Delehanty, S.).
It may well be, as is said in the Restatement of the Law of Trusts (Vol. 2, Ch. 11, § 399, subd. k, pp. 1217-1218), that: 1 ‘ If property is given in trust to be applied for the support of a particular charitable institution, and the institution subsequently merges with another institution established for similar purposes, the court will permit the application of the property for the new institution unless the settlor manifested an intention to restrict his gift to the institution he named. So also, where the institution ceases to exist, the court will permit an application of the property cy pres, unless the settlor manifested an intention to restrict his gift to the institution which he named.” (To similar effect, see 4 Scott on Trusts [2d ed.], p. 2844.) Professor Scott adds, at pages 2844^2845: “Not infrequently, however, the trust fails because the particular purpose is held to be of the essence of the intended trust. * * * If the trust fails, a resulting trust arises in favor of the persons who have succeeded to the estate of the testator ”. Again he says at page 2846: ‘ ‘ Where it clearly appears that the testator intended that the property should be applied only to the particular purpose which failed, or for the benefit of a particular association or corporation which was dissolved, it has been held that the doctrine of cy pres is not applicable and that the property reverts to the heirs or next of kin of the settlor.”
The language of paragraph “ tenth ” of this will means that the testator intended to benefit humanity in the field of medicine but only through the instrumentality of Syracuse University’s Medical College. The extensive discussion on behalf of respondent about the lifelong interest of the testator in the field of medicine and of medical education is of little help in deciding this question. It would lead one to suppose that the test of the application of the cy pres doctrine is whether this bequest was to serve the cause of humanity or was selfish in nature, as though the cause of humanity in the field, of medicine were not being served by a gift to Syracuse Medical College even if it were intended to benefit only that institution. One may safely conclude that if this gift had been phrased in language saying without more that the money was to go toward the support of the College of Medicine of said University, the substance of *670 the gift would not revert to the estate in event of the discontinuance of the medical college. That would probably follow from the liberality of the rules which the courts have adopted in order to save charitable gifts by the application of cy pres (Matter of Potter, 307 N. Y. 504, 517, supra; Matter of Durbrow, 245 N. Y. 469, 474). Here, however, we have significant language indicating that if this money could not go to Syracuse University for the benefit of its medical college the testator did not intend to make the gift. His associations of long standing with Syracuse University evidently meant as much to him as making donations for the advancement of medicine. This does not signify that he was directing the disposition of this money for selfish purposes; but it does mean that he chose to serve humanity provided that he could do so in this particular way.
The contingency for the taking effect of this gift in the first instance conditions the gift by rendering it ineffective unless ‘ ‘ within one year after my death the Medical College thereof shall be assured of permanency and of support adequate to keep the same forever in the rank of ‘ Class A ’ medical schools as now classified by the Council on Education of The American Medical Association, and expressed by a written statement to that effect signed by the President and Secretary of the Board of Trustees of said University ”.
Had he intended to make a general gift for the advancement of medicine without regard to the means by which it was to be accomplished, there would have been a substitutional gift to some other institution or institutions to fulfill this purpose in event that the Medical College of Syracuse University failed to qualify in this manner. Of course, if this bequest had stated that it would revert if the Syracuse University Medical College ceased to function, it would have been so plain that this gift would revert to the Heffron estate that there would have been no lawsuit. It is true that the will contains no express reverter in event that the gift takes effect but is afterward frustrated, but the condition that the gift of these funds is withheld in the beginning unless Syracuse University is equipped to use them through its medical college is an exposition of the object and purpose of the testator. The intention of a testator regarding such a matter is to be gleaned first of all from what is expressed in the will (Matter of Silsby, 229 N. Y. 396, 402; Matter of Watson, 262 N. Y. 284). He could not have made it clearer that *671 unless Syracuse University were in position to use this money for the promotion of the study of medicine or for research in its medical college he had no intention to give the money at all. That being true, the chance is remote that he would have designed to have had this fund go elsewhere if it developed that Syracuse University could not utilize it.
It is true that Professor Scott says (3 Scott on Trusts [1st ed.], § 399.3, pp. 2110-2111) that the cy pres doctrine is applied where at the time of the creation of the trust it is possible and practicable to carry out the specific directions of the testator, even though in course of time conditions change so that this becomes impossible. The context shows that what he is talking about is simply the classical case of the application of the cy pres doctrine, where the donee is in existence and qualified to take when the gift is made but later becomes unable to function. He is not speaking of a case such as this where there is an express condition in the instrument showing that testator did not intend to make the gift for any purpose unless it could be made to a particular institution. Professor Scott is merely stating the general rule that cy pres is applied where it becomes impossible to continue to administer a charitable gift that has taken effect. This statement is not aimed at an unusual condition such as the present which limits the gift in its inception to being administered by this particular institution. If Syracuse University were not to be equipped to do the job, the job was to be left undone insofar as this bequest is concerned. This money was to go to his estate if Syracuse were not qualified to take it in the first place, not by legal implication but by the testator’s express command. His desire to serve humanity did not relegate to insignificance the identity of the institution through which humanity was to be served. He did not donate these funds to the general object of caring for the sick regardless of the institution as the testator did in Matter of Potter (supra) in case of the poor. Dr. Heffron had been professor or dean at Syracuse Medical College for a quarter of a century. He made it as clear as words can that at the outset in making the gift he wanted this money to be handled by Syracuse University which was to serve both humanity and Syracuse University, but to revert if circumstances were such that it was impossible to promote both of these objectives in combination. If the underlying intention is being sought in the language of the instrument, rather than in some ambiguous extrinsic evidence, it *672 matters little whether a condition of this nature is expressed as precedent or subsequent. The property is not sought to be transferred to the State University pursuant to directions contained in the will, but by a provision which the court is asked to engraft upon the will. If the will covered the matter there would be no occasion to invoke cy pres, and the mere circumstance that the will does not contain such a direction is not fatal to the petition. But here a direction is sought to be engrafted on the will which does not carry out an intention which it might be supposed the testator would have harbored if he had known what was to happen, but which the language indicates is contrary thereto. Courts do not have that much power over other people’s money. This, it seems, is an instance where the language of the Massachusetts Court is pertinent (per Holmes, J., in Stratton v. Physio-Medical Coll., 149 Mass. 505, 509) that “ The favor shown to charities should not be carried to the point of overriding the plainly expressed limits of a gift, whether the duration is limited in so many words or not.”
The final order appealed from should be reversed and the petition dismissed.
Chief Judge Conway and Judges Dye and Froessel concur with Judge Van Voorhis; Judges Desmond, Fuld and Burke dissent and vote to affirm.
Order reversed, etc.