■ In the Matter of a Trust Created by JANE M. HUMMEL, Deceased. FLEET NATIONAL BANK, as Trustee of the Trusts Under Agreement of Jane M. Hummel, Deceased, Respondent; JAMES D. McNAUGHTEN JR. et al., Respondents, and EPISCOPAL CHARITIES OF ALBANY, INC., Appellant. (Proceeding No. 1.) (And Another Related Proceeding.) EPISCOPAL CHARITIES OF ALBANY, INC., Appellant, v ALBANY MEDICAL CENTER—SOUTH CLINICAL CAMPUS, Respondent, et al., Defendants. [817 NYS2d 424]—

Kane, J. Appeal from an order of the Supreme Court (Doyle, J.), entered July 12, 2005 in Albany County, which, inter alia, (1) denied motions by respondent Episcopal Charities of Albany, Inc. for summary judgment in proceeding Nos. 1 and 2, and (2) granted certain defendants' motions for summary judgment dismissing the complaint in a related action.

Vincent D. Hummel and Jane M. Hummel executed nearly identical documents establishing trusts providing them with lifetime benefits. Upon the death of one spouse, that spouse's trust provided a lifetime remainder of net income to the surviving spouse. Following the death of both spouses, the corpus of each trust was to be distributed by paying specified amounts to certain relatives and dividing the residue equally among three beneficiaries, respondent United Methodist Church, respondent/ defendant Albany Medical Center Hospital (hereinafter AMC) and "Child's Hospital, 25 Hackett Boulevard, Albany, New York." Jane Hummel died in 1994 and Vincent Hummel died in 2001.

In 1999, Child's Hospital entered into an asset purchase agreement whereby AMC and its affiliate, respondent/defendant Albany Medical Center-South Clinical Campus (hereinafter AMC-SCC), would purchase Child's Hospital's assets and facilities. As part of the court approval required for this transaction, Child's Hospital also changed its name to Episcopal Charities of Albany, Inc., and amended its corporate purpose, precluding it from operating a hospital and instead permitting it to fund faith-based health services.

Petitioner commenced two proceedings, one as trustee of each trust, for an accounting and to dispose of the remainder of the trusts payable to the now-defunct Child's Hospital. Episcopal Charities commenced an action claiming that AMC and AMC-SCC breached the asset purchase agreement by not transferring to it the proceeds of the Hummels' trusts. All parties moved for various relief. Supreme Court granted the motions for summary judgment by AMC and AMC-SCC and the Attorney General, held that the bequest to Child's Hospital should be transferred to AMC-SCC pursuant to the cy pres doctrine, dismissed Episcopal Charities' breach of contract action and denied the remaining motions as academic. Episcopal Charities appeals.

Contrary to the parties' arguments, no sections of the Not-For-Profit Corporation Law apply here. N-PCL 1005 is the codification of the cy pres doctrine applicable to assets of dissolved corporations, providing for distribution of assets to a corporation engaged in substantially similar activities (*see* N-PCL 1005 [a] [3] [A]). As Child's Hospital was not formally dissolved, that statute does not apply (*see Aquarian Ctr. for Initiation Corp. v Church of God of Smithtown*, 193 AD2d 708, 709 [1993]). N-PCL 905 (b) (2), providing for distribution of assets to the surviving or consolidated corporation after a merger, is similarly inapplicable here. Child's Hospital simply amended its corporate name and purpose under N-PCL 804, a statute that does not address

what standard applies to dispose of bequests after a corporation has disposed of its assets. Accordingly, no section of the Not-For-Profit Corporation Law applies here and EPTL 8-1.1 provided the appropriate standard.

Supreme Court properly distributed the bequest pursuant to the cy pres doctrine. "When a court determines that changed circumstances have rendered the administration of a charitable trust according to its literal terms either 'impracticable or impossible', the court may exercise its cy pres power to reform the trust in a matter that 'will most effectively accomplish its general purposes' " (*Matter of Wilson*, 59 NY2d 461, 472 [1983], quoting EPTL 8-1.1 [c] [1]; *see Matter of Post*, 2 AD3d 1091, 1093 [2003]). The cy pres doctrine only applies where " 'the testator's specific charitable purpose is no longer capable of being performed by the trust' . . . and . . . the testator had a general charitable intent" (*Matter of Post, supra* at 1093, quoting *Matter of Wilson, supra* at 472). Here, the trust documents evince a general charitable intent on behalf of the Hummels and, because no hospital or corporation named Child's Hospital exists, circumstances have changed making it impossible to carry out the specific charitable purpose of the trusts. Under these circumstances, pursuant to EPTL 8-1.1, the court was obligated to fashion a disposition of the trust property that, in the court's judgment, would "most effectively accomplish its general purposes" (EPTL 8-1.1 [c] [1]). Based on the facts, including that the Hummels were lifelong Methodists who had each received treatment at Child's Hospital, the court appropriately determined that the testators intended to benefit the hospital operating at 25 Hackett Boulevard rather than the Episcopal faith-based corporation that previously owned that hospital but was now precluded from operating a hospital (*compare Matter of Coffey*, 187 AD2d 929 [1992]; *Matter of Kraetzer*, 119 Misc 2d 436, 439-440 [1983] [noting that purpose of gift to hospital is deemed to be for the objects of the corporation, "actual and continued provision of acute patient care," not for corporation itself]). Thus, AMC and AMC-SCC, as current operators of the hospital at 25 Hackett Boulevard, were entitled to receive that portion of the trust under the cy pres doctrine.

Finally, the asset purchase agreement does not require a different result. A provision of that agreement stated that bequests or gifts that are unrestricted and "made with the intention that they benefit The Child's Hospital as currently owned and sponsored by the Episcopal Diocese" shall belong to Episcopal Charities. The facts show that the Hummels did not intend to benefit the missions of the Episcopal Diocese, and in fact were

most likely unaware of the hospital's religious affiliation. Thus, the agreement's language does not make the Hummels' bequests payable to Episcopal Charities. In any event, contractual provisions which violate public policy are unenforceable (*see Szerdahelyi v Harris*, 67 NY2d 42, 48 [1986]; *City of New York v 17 Vista Assoc.*, 192 AD2d 192, 198 [1993], *mod* 84 NY2d 299 [1994]). Public policy will not permit parties to circumvent the donor's intent, evade the court's cy pres powers and determine among themselves who will receive charitable gifts which cannot be distributed as specified (*see Matter of Notkin*, 45 AD2d 849, 849 [1974]; *see also Matter of Birch*, 50 AD2d 475, 479-480 [1976], *appeal dismissed* 40 NY2d 803 [1976], *lv dismissed* 40 NY2d 845 [1976]).

Mercure, J.P., Crew III, Spain and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs to Albany Medical Center-South Clinical Campus.