In the Matter of a Trust Created by MARGARET E. GURNEY, Deceased. CAROLYN RENNER, as Successor Trustee of the MARGARET E. GURNEY, JUNE 19, 2007 REVOCABLE TRUST, Respondent; ST. MARY'S ROMAN CATHOLIC CHURCH et al., Appellants, and HARTWICK COLLEGE et al., Respondents. [59 NYS3d 587]—

Devine, J. Appeal from an order of the Surrogate's Court of Otsego County (Lambert, S.), entered August 8, 2016, which, in a proceeding pursuant to EPTL articles 2 and 8, among other things, granted petitioner's cross motion to distribute a certain residuary share of a revocable trust pursuant to the antilapse statute.

Petitioner assumed her duties as successor trustee of a revocable living trust established by Margaret E. Gurney (hereinafter decedent) when decedent became unable to manage her affairs. The trust agreement directed that, upon decedent's death, the trust assets be applied toward her debts and gifts to various individuals and organizations. The trustee would then distribute percentages of the residuary trust corpus to three institutions including, as is relevant here, 20% to St. Mary's Roman Catholic School (hereinafter the school).

Decedent died in 2015, after which petitioner found herself unable to make the distribution to the school given that it had

been closed in 2011 and its grounds sold to an unrelated entity.[1] Petitioner commenced this proceeding seeking permission to distribute the school's share equally between the other two institutions named in the residuary clause (*see* EPTL 2-1.15). Respondents St. Mary's Roman Catholic Church, New York and Roman Catholic Diocese of Albany, New York (hereinafter collectively referred to as respondents)—the parish and diocese, respectively, under whose auspices the school operated— answered and argued that the school's share should be distributed to the parish's faith formation ministry and a diocesan scholarship fund pursuant to the cy pres doctrine (*see* EPTL 8-1.1 [c]). Respondents also moved for that relief, with petitioner cross-moving for the relief sought in her petition. Surrogate's Court declined to apply the cy pres doctrine and granted petitioner's cross motion. Respondents now appeal.

We affirm. The gift to the school was "charitable in nature and, for cy pres relief [to be appropriate], it was further necessary that the instrument[ ] establishing the gift[ ] revealed a general charitable intent and that circumstances had changed rendering impracticable or impossible strict compliance with the terms of the gift instrument[ ]" (*Matter of Lally*, 112 AD3d 1099, 1100 [2013]; *see Matter of Wilson*, 59 NY2d 461, 472 [1983]). Strict compliance with the terms of the trust agreement was impossible due to the closure of the school. We accordingly turn to whether the evidence evinces a general charitable intent on the part of decedent, defined "as a desire to give to charity generally, rather than merely to give to a particular object or institution" (5-8 New York Civil Practice: EPTL ¶ 8-1.1 [3] [d]; *see Matter of Syracuse Univ. [Heffron]*, 3 NY2d 665, 668 [1958]). In answering that question, we will read the trust agreement in its entirety and afford its words "their ordinary and natural meaning" (*Matter of Lanza*, 307 AD2d 265, 266 [2003]; *see Winter v American Parkinsons Disease Assn.*, 85 NY2d 715, 719 [1995]).

Turning to that agreement, all of the institutions to which decedent made gifts are in the City of Oneonta, Otsego County, suggesting an intent to limit her largesse to organizations in that area. When viewed in that context, a direction to distribute part of the residuary trust corpus "to the [school at] 5588 State Route 7, Oneonta, New York 13820" indicates a desire to support a school at that location rather than religious education projects in general. This reading is bolstered by the silence

---

**1.** Petitioner asserted that, by the time it was known that the school would close, decedent did not have the mental capacity to revisit questions regarding the disposition of the trust assets upon her demise.

of the trust agreement as to decedent's Catholic faith and the absence of gifts to the parish or other Roman Catholic institutions. Moreover, to the extent that the language of the trust agreement is unclear, petitioner gave deposition testimony revealing that decedent was aiming to support institutions in her adoptive hometown and had fond memories of volunteering at the school. Petitioner further stated that decedent, although a regular churchgoer who financially supported the parish, had no interest in Roman Catholic education per se and had "satisfied" what she saw as a duty to give to the parish during her lifetime.[2] The case might be different if the school had been merged into, or if there even was, another parochial school in the Oneonta area. As things stand, however, "there is no direction which could be made by the Court which would accomplish [decedent's intent], [and] the legacy cannot be made effective" (*Matter of Aker*, 21 AD2d 935, 936 [1964]; *see Saltsman v Greene*, 136 Misc 497, 498-499 [1930], *affd* 231 App Div 781 [1930], *affd* 256 NY 636 [1931]; *cf. Matter of Lally*, 112 AD3d at 1101; *Matter of Hummel*, 30 AD3d 802, 804 [2006], *lv denied* 7 NY3d 713 [2006]). Thus, it was proper for Surrogate's Court to decline to apply the cy pres doctrine and distribute the residuary assets pursuant to EPTL 2-1.15.

Respondents' remaining arguments have been considered and lack merit.

McCarthy, J.P., Garry and Rose, JJ., concur.

Lynch, J. (dissenting). I respectfully dissent. In 2007, Margaret E. Gurney (hereinafter decedent) established a revocable living trust, including specific bequests and a residuary clause that distributed the remainder of her estate to three charitable institutions in the City of Oneonta, Otsego County as follows: 40% each to respondents A.O. Fox Memorial Hospital and Hartwick College, and 20% to respondent St. Mary's Roman Catholic School at "5588 State Route 7 in Oneonta, New York 13820" (hereinafter the school). There is no dispute that the closure of the school in June 2011 rendered the gift "impracticable or impossible" within the meaning of EPTL 8-1.1 (c) (1). As such, Surrogate's Court was authorized to provide cy pres relief, as requested by the school only if "the instrument[ ] establishing the gifts revealed a general charitable intent" (*Matter of Lally*, 112 AD3d 1099, 1100 [2013]; *see Matter of Syracuse Univ. [Heffron]*, 3 NY2d 665, 670-671 [1958]; *Matter of Hummel*, 30 AD3d 802, 804 [2006], *lv denied* 7 NY3d 713

---

**2.** Petitioner testified, in fact, that decedent preplanned her funeral and burial arrangements to avoid the trappings of Catholicism and did not make a bequest to the parish in her will.

[2006]; *Matter of Post*, 2 AD3d 1091, 1092-1093 [2003]). To answer that question, we must consider the entire trust instrument and not just the specific gift provision that can no longer be implemented.

Doing so here, I read the trust as reflecting a general charitable intent on decedent's part. Not unlike the trust in *Matter of Hummel* (30 AD3d at 804), decedent left her residuary estate to three charitable institutions. She also made a specific bequest to the Huntington Memorial Library in Oneonta. The record confirms that the bulk of her estate passed through the residuary clause, evidencing an overall charitable intention (*see Matter of Othmer*, 12 Misc 3d 414, 421 [2006]). Notably, there is no specific language qualifying the gift should the school cease operations (*compare Matter of Syracuse Univ. [Heffron]*, 3 NY2d at 670). Nor does providing the school address in the bequest evidence any such specific limitation. The school was not a separate legal entity, but was operated by respondent St. Mary's Roman Catholic Church, New York (hereinafter the parish), situated in Oneonta. Moreover, decedent had a history of providing financial support to both the school and the parish both before and after the trust was established. This history runs counter to petitioner's deposition testimony—quoted by the majority—that decedent had "satisfied" her obligations to the parish prior to establishing the trust. Also of consequence is the representation in the moving affidavit of the parish pastor that the parish has continued the school's mission "through the parish Faith Formation education program."

Given that these factors evidence a general charitable intent, the case should be remitted for a hearing to determine the proper distribution of the funds to " 'most effectively accomplish [decedent's] general purpose[ ]' " (*Matter of Wilson*, 59 NY2d 461, 472 [1983], quoting EPTL 8-1.1 [c] [1]; *accord Matter of Hummel*, 30 AD3d at 804; *see Matter of Chamberlin*, 135 AD3d 1052, 1053 [2016]).

Ordered that the order is affirmed, with one bill of costs.