**IN THE COURT OF APPEALS OF IOWA**

No. 3-1091 / 12-2020
Filed February 5, 2014


**LONG BRANCH MAINTENANCE CORPORTATION,**
     Plaintiff-Appellant,

**vs.**

**NICOLE ADAMS,**
     Defendant-Appellee.
_____


Appeal from the Iowa District Court for Guthrie County, Martin L. Fisher,

Judge.


Long Branch Maintenance Corporation appeals the denial of its claim for

membership dues from Nicole Adams.  **AFFIRMED.**



Louis R. Hockenberg and Elizabeth N. Overton of Sullivan & Ward, P.C.,

West Des Moines, for appellant.

Joel Baxter of Wild, Baxter & Sand, P.C., Guthrie Center, for appellee.



Heard by Potterfield, P.J., and Doyle and Bower, JJ.

**POTTERFIELD, P.J.**

Long Branch Maintenance Corporation appeals[1] the denial of its claim for membership dues and assessments from Nicole Adams. Because the district court did not err in concluding a prior small claims ruling had no preclusive effect on the current small claims proceedings, and further, did not err in interpreting the corporation's bylaws and membership agreement, we affirm.

**I. Background Facts and Proceedings.**

Long Branch Maintenance Corporation (LBMC) is an entity organized "[t]o encourage the betterment, cleanliness, maintenance and beautification of the Diamondhead Lake Development situated in Guthrie County, Iowa, and to further the participation in enjoyment of recreational facilities and to promote other services for the benefit of the members of LBMC."

Nicole Adams purchased property in the Diamondhead Lake area in 2003. On February 20, 2003, Adams signed a membership agreement, which begins, "The undersigned, hereinafter referred to as "member," being an eligible member in the [LBMC] does hereby agree with corporation as follows, and by execution of this Agreement becomes a qualified member of the corporation pursuant to the Articles of Incorporation and By-Laws of the corporation." Adams further agreed to "participate as a qualified member in corporation [LBMC] pursuant to corporation's Articles and By-Laws." The membership agreement also provided:

> Member agrees that the real estate of each member located in Happy Acres/Diamondhead Lake Development, described herein under the signature of member, shall be subject to an annual

---

[1] Submitted with the appeal are the parties' statements pointing out inaccuracies in the transcript. We have reviewed the statements and noted the parties' corrections.

assessment and said assessment shall be a lien in favor of corporation on member's interest in and said real estate if not paid when due. Said annual assessment shall be due annually, payable at such time as the corporation By-Laws direct.

Article III, section 1 of the LBMC Rulebook & Bylaws provides:

> All lot owners and all contract buyers in the Diamondhead Lake Development located in Guthrie County, Iowa shall be eligible for membership in this corporation. Said eligible members may become duly qualified members of the corporation upon their execution of the membership agreement, which agreement shall bind them in certain responsibilities to the corporation when recorded in Guthrie County, Iowa and all subsequent purchasers from said duly qualified members shall automatically become members in place of the member/seller upon recording in Guthrie County, Iowa of the instrument of sale. Within ten (10) days of property ownership change, written notice must be submitted to LBMC.

On October 17, 2011, LBMC filed a small claims action against Adams, demanding $3720.76 plus attorney fees and costs "based on [Adams's] failure to pay [her] delinquent dues, assessments, and other fees as required by Iowa Code Chapter 91A [(2011)]."[2] Adams filed an answer denying the claim and making a counterclaim.

LBMC Lake Director Ed Eustice testified at the small claims proceeding the litigation was based on Adams being a qualified member of LBMC. Eustice testified Adams had been delinquent in paying dues, fees, assessments, and late charges since July 2009. He stated the amount Adams owed LBMC as of April 1, 2012, was $4647. He also asked the court to assess interest and attorney

---

[2] Chapter 91A of the Iowa Code is the "Iowa Wage Payment Collection Law" and appears to have no application to LBMC's claim for dues and assessments. At the start of the small claims proceeding, the magistrate noted LBMC was "removing the Chapter 91A portion of the original Notice and/or Petition," and denied Adams's motion to dismiss for lack of subject matter jurisdiction.

fees as provided by the bylaws. Eustice stated LBMC had filed a prior small claims action for dues and Adams had countersued, which action was resolved in July 2010 in favor of LBMC. On cross-examination, Eustice testified Adams' membership agreement had not been recorded with Guthrie County. Eustice stated that because Adams was not current with payments, she did not have access to the amenities of the lake development, though she did use the roads maintained by LBMC.

Adams acknowledged signing the membership agreement. Adams testified she did not get LBMC statements like the one provided to the court. Adams acknowledged an earlier small claim proceeding had resulted in a judgment against her. However, when asked if the court in that earlier proceeding had found her to be a member since 2003, she stated, "I don't know, that was never argued." She testified she was not allowed to enter exhibits in the prior small claims action. Adams testified the LBMC Rulebook and Bylaws distinguishes between a member and a qualified member.[3] She also testified some of the charges that were included in the statement presented to the magistrate as exhibit 1 had already been included in the earlier judgment. She testified she did not receive information from LBMC about the budget, dues, and assessments other than an invoice, and she did not receive notice about member meetings.

---

[3] The magistrate reopened the matter after the initial hearing to ask that copies of LBMC's recorded bylaws be provided. Counsel for LBMC reported that no bylaws had been recorded until 2012, though several versions had been "in effect." LBMC then provided to the magistrate the following versions of the "LBMC Rulebook & Bylaws": the 2006 edition, the 2007 edition, the 2009 edition, (the 2010 edition was admitted earlier as exhibit 3), the 2011 edition, and the 2012 edition. We note that Article III, section 1 is the same in each.

The magistrate asked the parties to brief the issue of how a member became a duly qualified member of LBMC. In post-trial briefs, Adams argued the recording of the member's membership agreement was a condition precedent to becoming a qualified member; LBMC argued Adams was automatically a member as a subsequent purchaser. In rebuttal, Adams argued there was no evidence presented that she purchased property from a duly qualified member.

The magistrate ruled Article III, section 1 of the LBMC Rulebook and Bylaws contained a condition precedent to Adams becoming a qualified member of LBMC—the recording of her membership agreement. Because Adams's membership agreement was not recorded, Adams was not a qualified member of LBMC and, "therefore not subject to suit under the terms of the membership agreement or [LBMC's] Bylaws." The magistrate concluded it was "not bound by prior findings, actions or judgment" entered against Adams on July 27, 2010. LBMC appealed to the district court.

The district court conducted a de novo review of the record. *See* Iowa Code § 631.13(4)(a); *Witcraft v. Sundstrand Health & Disability Group Benefit Plan*, 420 N.W.2d 785, 787 (Iowa 1988) ("In an appeal from a small claims action, the district court conducts a de novo review on the record before the magistrate."). The court concluded, "LBMC failed to follow its own bylaws when it neglected to properly record Adams' membership agreement. Consequently, Adams is not obligated to pay the various fees sought by LBMC in this particular

case."[4]  The district court rejected LBMC's contention that a prior small claims ruling precluded Adams from arguing she was not a qualified member.

LBMC was granted discretionary review by our supreme court and the matter was transferred to this court.  *See* Iowa Code § 631.16(1) ("A civil action originally tried as a small claim shall not be appealed to the supreme court except by discretionary review as provided herein.")

## II. Scope and Standard of Review.

A discretionary review of a small claims decision tried at law is reviewed for correction of errors at law.  *GE Money Bank v. Morales*, 773 N.W.2d 533, 536 (Iowa 2009).  "We are bound, however, by a court's finding of fact if supported by substantial evidence."  *Id.*

## III. Discussion.

LBMC contends the issue of whether Adams was a member[5] of LBMC was previously decided in a July 27, 2010 small claim action and cannot be relitigated.  LBMC also contends the district court ruling is in contravention to *Okoboji Camp Cooperative v. Carlson*, 578 N.W.2d 652 (Iowa 1998), wherein the supreme court ruled a property owner was required to pay for the benefits conferred on the property regardless of membership status.  It argues further the district court misinterpreted its bylaws.

---

[4]  The court noted that LBMC has since "taken corrective action to ensure the enforceability of future obligations of association members."

[5]  The membership agreement provides the real estate of a "member" is subject to an annual assessment.  The bylaws refer to lot owners as "eligible members" who can become "duly qualified members."  LBMC's documentary materials thus recognize a distinction between types of members, which LBMC ignores here.  Eustice testified this small claim action was premised on Adams being a "qualified member."

*A. Issue preclusion.* LBMC argues the finding in the July 27, 2010 small claim ruling—"[Adams] became a member of [LBMC] when she became an owner of property located at Diamondhead Lake Development in February 2003"—previously decided the issue of Adams's membership and should be given preclusive effect. Adams responds that the district court appropriately applied an exception to the issue preclusion doctrine; and, in any event, the issue of membership was not fully litigated in the earlier ruling.

The doctrine of issue preclusion generally "prevents parties to a prior action in which judgment has been entered from litigating in a subsequent action issues raised and resolved in the previous action." *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981). Thus, when an issue of law that is "actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties." *Id.* (citation and internal quotation marks omitted). Four requirements must be met before we will employ the doctrine:

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Id.*

In reviewing the 2010 small claim ruling, there is no indication the issue of whether Adams was a qualified member was raised. Because the second factor—that the issue must have been raised and litigated—is lacking here, we conclude the district court did not err in proceeding to decide the issue of whether Adams was a qualified member under LBMC's Rulebook and Bylaws.

The district court recognized the general rule of issue preclusion, but opined LBMC's reliance on an earlier dismissal of a 2011 small claim was not based on issue preclusion, but claim preclusion.[6] The district court opined:

> Iowa case law recognizes that a party may not relitigate a claim that has been adversely decided in small claims court. *See Bagley* [, 465 N.W.2d at 554]. LBMC points to this Court's [2011] decision in *Nicole Adams v. Michael Mars & Jim Mazour*, Guthrie Co. Docket No. SCSC014748, in support of the proposition that Adams may not relitigate the issue of her membership status. However, the Court's decision in that case was driven by the fact that Adams had attempted to relitigate a counterclaim for damages that had been previously rejected by the District Court in [the 2010 small claim action,] *Long Branch Maintenance Corporation v. Nicole Adams*, Guthrie Co. Docket No. SCSC014484.
>
> In that situation, this Court determined [in 2011] that Adams was seeking to collect damages against LBMC's corporate officers that had already been denied in the earlier [2010] counterclaim. Because that claim essentially involved the same parties and same damage allegations, this Court held that the doctrine of claim preclusion prevented Adams from getting a "second bite of the apple."
>
> However, Iowa case law does not preclude parties from relitigating a legal issue that has previously been ruled upon in a small claims action. *Village Supply Co, Inc. v. Iowa Fund, Inc.*, 312 NW2d 551, 554 (Iowa 1981). Because of the informal manner by which small claims actions are heard, the Iowa Supreme Court adopted the exception to normal issue preclusion rules that is suggested in Restatement (Second) of Judgments [section] 68.1, clause (c).
>
> At the trial of this specific case, Adams was able to develop a persuasive argument in defense of LBMC's most recent effort to collect association dues and fees. While LBMC may have prevailed in previous collection efforts, Adams' defense in this case was sufficient to allow her to prevail in this case. This Court finds

---

[6] In *Bagley v. Hughes A. Bagley, Inc.*, 465 N.W.2d 551, 554 (Iowa Ct. App. 1990), we explained,

> Claim preclusion is different than issue preclusion, and, unlike issue preclusion, the adjudication of a claim in small claims court can have a preclusive effect within the regular jurisdiction of the district court. Claim preclusion can prevent a claimant from relitigating a claim in district court if the claim has been litigated in small claims court.

*Bagley*, 465 N.W.2d at 554 (citations omitted).

nothing in the record that warrants reversal of the Judicial Magistrate's verdict.

As noted by the district court, in *Village Supply* our supreme court adopted the exception to the doctrine of issue preclusion found in section 68.1 of the Restatement (Second) of Judgments (Tent. Draft No. 4, 1977), which provides:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: . . . (c) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedure followed in the two courts or by factors relating to the allocation of jurisdiction between them.

*See Village* Supply, 312 N.W.2d at 554.

LBCM states the exception is not applicable because both the instant action and the 2010 action were commenced in small claims, where in *Village Supply*, one case was tried in small claims and the other in district court. The purported distinction is unconvincing. The emphasis of the supreme court in adopting the exception was on the informality of the small claims proceedings, which is pertinent here:

> Small claims cases are governed by special statutes and rules. [*See* Iowa Code ch. 631 (2011)]. Among them is the requirement that the trial "be simple and informal, . . . without regard to technicalities of procedure." The statutes prescribe "a simple, swift, and inexpensive procedure for hearing and determining civil claims for money not exceeding [$5000] and some forcible entry cases." Although small claims are tried in the district court, they are docketed, tried and appealed under special procedures which are intended to avoid the rigidity and formality of regular trials. The parties do not have a right to jury trial.

*Id.* (citations omitted).

Adams testified she was not allowed to present exhibits in the 2010 proceeding and the issue of whether she was a member was not argued. *Cf.*

*Palmer v. Tandem Mgmt. Servs., Inc.*, 505 N.W.2d 813, 817 (Iowa 1993) ("Because of the unique statutory framework applying to forcible entry and detainer actions, the issue preclusion analysis in *Village Supply Co. v. Iowa Fund, Inc.*, 312 N.W.2d 551 (Iowa 1981), does not apply. Here, the claim of retaliatory eviction was fully considered by the small claims court and reviewed on appeal to the district court.").

Moreover, an argument similar to LBCM's was rejected in *Village Supply*:

[W]e reject Village Supply's separate contention that Iowa Fund is precluded from litigating the issue in this appeal by the district court ruling affirming the second small claims judgment. Village Supply contends the situation is different because it relies on a judgment by a district judge on appeal. The problem with the contention is that an appeal in a small claims action is ordinarily decided on the record made in the original hearing. [*See* Iowa Code] § 631.13(4). The case is not retried under regular district court procedures. *Affirmance of the small claims judgment did not change its character. The exception in clause (c) of Restatement section 68.1 is applicable. Therefore, even though review of the affirmance was not sought, we hold that the adjudication does not preclude litigation of the contract interpretation issue in this appeal.*

*Village Supply*, 312 N.W.2d at 554 (emphasis added).

Whether we state our conclusion that issue preclusion is not applicable because of a failure of one of the four requirements (issue actually litigated), or as an exception to the doctrine (due to the limited nature of the small claims proceedings), the result is the same. Adams was not precluded from raising the issue of whether she was a "qualified member" of LBMC.

*B. Okoboji Camp case.* LBMC next argues the district court ignored supreme court precedent, citing *Okoboji Camp Owners Co-op v. Carlson*, 578 N.W.2d 652, 654 (Iowa 1998). The case is not on point in as much as it was decided on a theory of unjust enrichment. *See Okoboji Camp*, 578 N.W.2d at

654 (noting there was no express agreement between the parties and the court found the cooperative had met its burden to obtain restitution by offering proof of the reasonable value of the benefits conferred); *see also Brentwood Subdivision Rd. Ass'n, Inc. v. Cooper*, 461 N.W.2d 340, 342 (Iowa Ct. App. 1990) (concluding the evidence was sufficient from which the "trial court could have reasonably determined an equitable contribution that should be paid by the appellees for the years since the corporation was formed and a method to equitably calculate future contributions"). In *Okoboji Camp* and *Brentwood*, no express agreement governed, and the issue was whether the homeowners' associations had submitted sufficient evidence of the benefits conferred upon the property owners to justify a contribution by the property owners. *See Okoboji*, 578 N.W.2d at 654; *Brentwood*, 461 N.W.2d at 342. That type of evidence was not presented here because LBMC relied upon its express agreement with Adams.

*C. Contract Interpretation.* This brings us to the question of whether the district court misinterpreted the parties' agreement. LBMC argues Adams was "contractually obligated to pay the assessments."

The cardinal rule of contract interpretation is to determine the parties' intentions at the time they executed the contract. *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999). We strive to give effect to all the language of a contract, which is the most important evidence of the contracting parties' intentions. *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 77 (Iowa 2011). "It is a fundamental and well-settled rule that when a contract is not ambiguous, we must simply interpret it as written." *Smidt v. Porter*, 695 N.W.2d 9, 21 (Iowa 2005).

The Iowa Supreme Court set forth a two-step analysis for contract interpretation as follows:

> First, from the words chosen, a court must determine what meanings are reasonably possible.  In so doing, the court determines whether a disputed term is ambiguous.  A term is not ambiguous merely because the parties disagree about its meaning.  A term is ambiguous if, after all pertinent rules of interpretation have been considered, a genuine uncertainty exists concerning which of two reasonable interpretations is proper.
>
> Once an ambiguity is identified, the court must then choose among possible meanings.  If the resolution of ambiguous language involves extrinsic evidence, a question of interpretation arises which is reserved for the trier of fact.

*Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001) (internal quotation marks and citations omitted).

We begin with the language of the documents themselves.[7]  *See id.* Adams signed a membership agreement in which she agreed to "participate as a *qualified member* in corporation [LBMC] pursuant to corporation's Articles and By-Laws."  (Emphasis added.)  Article III, section 1 of the LBMC Rulebook & Bylaws provides:

> All lot owners and all contract buyers in the Diamondhead Lake Development located in Guthrie County, Iowa shall be eligible for membership in this corporation.  Said eligible members may become duly qualified members of the corporation upon their execution of the membership agreement, which agreement shall bind them in certain responsibilities to the corporation when recorded in Guthrie County, Iowa and all subsequent purchasers from said duly qualified members shall automatically become members in place of the member/seller upon recording in Guthrie

---

[7] Citing *Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa Ct. App. 1979), LBMC contends "the existence of a condition precedent depends on the intention of the parties, not the language of the contract."  This is a mischaracterization of the citation.  The *Mosebach* court stated, "A determination that a condition precedent exists depends not on the particular form of words used, but upon *the intention of the parties gathered from the language of the entire instrument.*"  282 N.W.2d at 759.

County, Iowa of the instrument of sale. Within ten (10) days of property ownership change, written notice must be submitted to LBMC.

Relying upon the last half of the second sentence, LBMC points out that Adams was a subsequent purchaser under Article III, section 1 and thus, automatically became a member when the instrument of sale was recorded. The problem with this argument is a complete lack of proof of LBMC's assertions. No evidence of the sale of property to Adams is found in this record. We do not know from whom she purchased the property. There is no evidence the instrument of sale was recorded. And LBMC fails to note that only subsequent purchasers "from said duly qualified members shall automatically become members in place of the member/seller."

LBMC next contends the membership agreement signed by Adams does not require it to be recorded before becoming binding. But this argument ignores the terms of both the membership agreement and LBMC Rulebook and Bylaws. Adams signed a membership agreement that provides she, "being an eligible member . . . and by execution of this Agreement becomes a qualified member of the corporation *pursuant to the Articles of Incorporation and By-Laws*." (Emphasis added.). Article III, section one of the LBMC bylaws provides "owners . . . . shall be *eligible* for membership." The provision continues: "Said eligible members *may become duly qualified members* of the corporation upon their execution of the membership agreement, *which agreement shall bind them . . . when recorded*."

We begin with the bylaws' premise that "[a]ll lot owners . . . shall be eligible for membership." Thus, we know that lot owners are not automatically

members. "[E]ligible members *may* become duly qualified members . . . upon their execution of the membership agreement." In other words, execution of the membership agreement does not automatically make a lot owner a member. The agreement "shall bind them . . . when recorded in Guthrie County, Iowa." Because there is no doubt that Adams' membership agreement was *not* recorded at the time this action was filed, we find no error in the district court's conclusion that Adams "was not obligated to pay the various fees sought by LBMC in this particular case."

*D. Appellate attorney fees.* Both parties seek an award of appellate attorney fees. LBMC relies upon Article XIII, section 6 of its Rulebook and Bylaws. Paragraph 3 of section 6 provides, "Legal action will be initiated with all costs of collection assessed to the member, such legal action to include reasonable attorney's fees and court costs . . . ." Because LBMC has not prevailed, there are no "costs of collection" and we award no attorney fees.

Adams has provided no authority for her request for attorney fees, which we deny.

Costs are assessed to LBMC.

**AFFIRMED.**